UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

-v.-

DARNELL KING,

                      Defendant.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3/24/2022

21-CR-255 (NSR)
OPINION & ORDER

NELSON S. ROMÁN, United States District Judge:

Defendant Darnell King ("Defendant") was charged on April 7, 2021, with one count of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). (ECF No. 2.) On January 13, 2022, Defendant filed a motion to suppress pursuant to Federal Rules of Criminal Procedure 12 and 41. (ECF No. 21.) For the following reasons, Defendant's motion to suppress is DENIED.

## BACKGROUND

The Complaint alleges that on or about March 12, 2021, an individual ("Victim-1") was shot in the stomach and the leg in Mount Vernon. (ECF No. 2 ¶ 4.) Mount Vernon Police Department ("MVPD") officers responded to reports of an individual having been shot. (*Id*.) Upon arriving, the officers found Victim-1 on the floor of a bodega bleeding from his gunshot wounds. (*Id*.) MVPD was able to identify security cameras and reviewed video footage to identify the shooter. (*Id*. ¶ 3.)

From approximately 4:10 PM until 4:13 PM, a black male dressed in dark, ripped jeans, a black sweatshirt, and black ski mask ("Suspect-1") is seen on security video removing his ski mask. (*Id*. ¶ 4.) From approximately 4:13 PM through 4:17 PM, Suspect-1 is seen getting closer

and closer to the shooting location. (*Id*.)  Once arriving at the location, Suspect-1 is seen hiding behind a parked car as Victim-1 crossed towards him. (*Id*.)  As Victim-1 approached the parked car, Suspect-1 emerged and grabbed Victim-1 by the collar and pulled him onto the sidewalk. (*Id*.)  The two struggled before Victim-1 tried to run away, grabbed his stomach, and then fell to the ground. (*Id*.)  At the same time, two bystanders ran from the area and ducked for cover. (*Id*.)  Suspect-1 then ran away. (*Id*.)  At approximately 4:19 PM he reappeared on video and is seen at the end of an alleyway that contained a small crawl space. (*Id*.)  He later jogs away. (*Id*.)

Later that afternoon, MVPD officers responded to the alleyway, and recovered a firearm in the small crawl space. (*Id*.)  The firearm is a Taurus Model G2C pistol. (*Id*.)  MVPD also identified Suspect-1 to be Defendant. (*Id*.)  Defendant was previously convicted of criminal possession of a weapon in the second degree and sentenced to nine years' imprisonment, and criminal possession of a controlled substance in the fifth degree and sentenced to two years' imprisonment. (*Id*. ¶ 7.)

On April 7, 2021, Magistrate Judge Krause signed the Complaint charging Defendant with one count of being a felon in possession of a firearm in violation of Title 18, United States Code Section 922(g)(1). (*Id*. at 6.)  On April 8, 2021, Defendant was arrested and his cell phone, which he was in possession of at the time, was seized by police. (Mr. King's Reply Brief to the Government's Memorandum of Law in Opposition to Mr. King's Motion to Suppress ("Reply") ECF No. 24 at Ex. A ¶¶ 2-4.)

On April 14, 2021, The Government sought and secured a search warrant (the "Search Warrant") to search Defendant's cell phone, an Apple iPhone 11 with a black and red cover (the "Phone"). (Memorandum of Law in Support of Darnell King's Motion to Suppress ("Mem.") ECF No. 21 at Ex. A.)  The basis for the search is listed as (i) evidence of a crime, (ii) contraband, fruits

of crime, or other items illegally possessed, and (iii) property designed for use, intended for use, or used in committing a crime. (*Id*.) The Search Warrant sought permission to:

> review the ESI contained on the [Phone] for evidence, fruits, and instrumentalities of violations of Title 18 United States Code, Section 922(g) (felon in possession of a firearm) (the "Subject Offense") that was created, sent, received, obtained, opened, modified, or saved between March 1, 2021 and the date the warrant is executed, described as follows:
>
> (1) Evidence concerning the identity or location of the owner(s) or user(s) of the [Phone];
>
> (2) All file or media containing text, photos, sound recordings, or videos stored on the [Phone] pertaining to the Subject Offense including, but not limited to, media related to firearms;
>
> (3) The geographic location of the user of the [Phone] on March 12, 2021;
>
> (4) Emails, text messages, chats, instant messages, images, photographs, videos, or voicemails evidencing commission of the Subject Offense; and
>
> (5) Any other user or system file and data on the [Phone] that would constitute evidence of violations of the Subject Offense.

(*Id*.) Magistrate Judge McCarthy signed the Search Warrant. (*Id*.)

On January 13, 2022, Defendant filed a motion to suppress the evidence obtained from the Phone. (ECF No. 21.) The Government filed an opposition on February 3, 2022 (ECF No. 23), and Defendant filed a reply on March 1, 2022 (ECF No. 24.)

**LEGAL STANDARD**

The Fourth Amendment prohibits "unreasonable searches and seizures," and mandates that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. Amend. IV. As the Supreme Court has stated, "probable cause is a fluid concept--turning on the assessment of probabilities in particular factual contexts--not readily, or even usefully, reduced to a neat set of legal rules." *Illinois v. Gates*, 462 U.S. 213, 232 (1983). Therefore, the

probable-cause determination "is not overly strict." *United States v. Martin*, 426 F.3d 68, 74 (2d Cir. 2005). "Presented with a warrant application, [a] judge must 'simply . . . make a <u>practical, commonsense decision</u> whether, given all the circumstances set forth in the affidavit before him [or her] . . . there is a <u>fair probability</u> that contraband or evidence of <u>a</u> crime will be found in a particular place.'" *Id*. (quoting *Gates*, 462 U.S. at 238) (emphasis in original).

"The quanta of proof necessary to establish probable cause is 'only the probability, and not a prima facie showing, of criminal activity.'" *United States v. Wagner*, 989 F.2d 69, 72 (2d Cir. 1993) (quoting *Gates*, 462 U.S. at 235). "In assessing probabilities, a judicial officer must look to 'the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.'" *Walczyk v. Rio*, 496 F.3d 139, 156 (2d Cir. 2007) (quoting *Gates*, 462 U.S. at 231). "[T]he resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants." *United States v. Smith*, 9 F.3d 1007, 1012 (2d Cir. 1993) (quoting *United States v. Ventresca*, 380 U.S. 102, 109 (1965)). Such determinations must be approached in a practical way, because "probable cause is a flexible, common-sense standard." *Texas v. Brown*, 460 U.S. 730, 742 (1983). Additionally, the totality-of-the-circumstances approach includes a recognition of the training and experience of law enforcement agents in assessing human behavior and evidence. *See Gates*, 462 U.S. at 231–32.

Once a warrant has been issued by a judge and executed, the duty of a court reviewing a magistrate judge's probable cause determination on a motion to suppress is far more limited: its task is "simply to ensure that the magistrate had a 'substantial basis for . . . [concluding]' that probable cause existed." *Gates*, 462 U.S. at 238–39 (quoting *Jones v. United States*, 362 U.S. 257, 271 (1960)). The issuing magistrate's decision is "entitled to substantial deference, and 'doubts should be resolved in favor of upholding the warrant.'" *United States v. Rosa*, 11 F.3d 315, 326

(2d Cir. 1993) (quoting *United States v. Travisano*, 724 F.2d 341, 345 (2d Cir. 1983)). Indeed, the magistrate's "finding of probable cause is itself a substantial factor tending to uphold the validity of [the] warrant." *Travisano*, 724 F.2d at 345. "Such deference derives not only from the law's recognition that probable cause is 'a fluid concept' that can vary with the facts of each case, but also from its 'strong preference' for searches conducted pursuant to a warrant[.]" *United States v. Clark*, 638 F.3d 89, 93 (2d Cir. 2011) (quoting *Gates*, 462 U.S. at 232; 236). Thus, the "task of a reviewing court is simply to ensure that the 'totality of the circumstances' afforded the magistrate 'a substantial basis' for making the requisite probable cause determination." *Id.* (quoting *Gates*, 462 U.S. at 238).

## DISCUSSION

Here, Defendant is arguing that any evidence found on the Phone must be suppressed as (i) the Search Warrant did not adequately establish that evidence of a crime would be found on the Phone, and (ii) the Search Warrant was overbroad and did not adequately limit the scope of the search. The Court will examine both below.[1]

### I. Whether There was a Sufficient Nexus Between the Alleged Criminal Activities and Defendant's Phone

Defendant avers that the Government failed to provide an adequate basis to conclude that the Phone would contain evidence of wrongdoing, as the warrant application does not include specific facts suggesting the Phone would likely contain evidence of criminal activity. (Mem. at 9.)

---

[1] The Government first avers that Defendant failed to establish standing to move to suppress evidence on the Phone as he failed to allege a possessory interest in the Phone under oath. (The Government's Memorandum of Law in Opposition to Defendant Darnell King's Motion to Suppress ("Opp.") ECF No. 23 at 7-9.) Instead, Defendant's counsel submitted an affidavit that states he was unable to meet with the incarcerated Defendant to get an affidavit due to the COVID-19 pandemic. (Mem. Ex. B.) However, counsel was able to see Defendant before filing his reply papers and was able to submit an affidavit from Defendant as an exhibit. (Reply at Ex. A.) Therefore, the Government's argument is now moot.

5

The Court holds that the totality of the circumstances afforded Magistrate Judge McCarthy a substantial basis for making the determination that Defendant's Phone would contain evidence, fruits, and instrumentalities of the offense. In support of the application, Special Agent Dave Wilson of the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") swore in an affidavit that the security camera footage showed Defendant holding the Phone minutes before the shooting. (Mem. Ex. A.)  He also discusses that, based on his training and experience, cellphones contain records of the cellphone's location, and therefore the Phone would likely contain records of Defendant's locations during and after the shooting. (*Id*.)  This, by itself, is sufficient to create probable cause to search the Phone. *See United States v. Harvey*, No. 21-CR-335 (SJ), 2022 U.S. Dist. LEXIS 40979, at *25–26 (E.D.N.Y. Mar. 6, 2022) ("[T]he fact that Harvey was recorded using a cellphone moments after the March 15, 2021, attempted robbery and shooting establishes the evidentiary nexus between his cellphone and criminal activity."); *United States v. Robinson*, No. 16-CR-545 (S-3)(ADS), 2018 WL 5928120, at *16 (E.D.N.Y. Nov. 13, 2018) ("Although the Liscinsky Affidavit lacks facts directly alleging that the Defendant used the Roof Cellphone in connection with the crime, the fact that SCPD discovered the phone at the scene of the crime creates a sufficient factual nexus to justify the search.").

In addition, Agent Wilson swore that individuals who engage in the unlawful possession of firearms store records related to these activities on cellphones, including photographs and videos of firearms, and communications regarding the acquisition of firearms. (Mem. Ex. A.)  Lastly, Agent Wilson discussed that cellphones may contain pictures or videos of the user wearing certain identifiable clothing that may help identify if he is the shooter. (*Id*.)  As "a Government agent's expert opinion 'is an important factor to be considered by the judge when making a probable cause determination'" this testimony provided a fair probability that evidence of the crime would be

found on the Phone. *United States v. Brown*, 676 F. Supp. 2d 220, 228 (S.D.N.Y. 2009) (quoting *United States v. Benevento*, 836 F.2d 60, 71 (2d Cir. 1987)). Accordingly, the Court finds that Magistrate Judge McCarthy had a substantial basis for concluding that probable cause existed for the Search Warrant.

## II.     Whether the Search Warrant was Overbroad

Defendant next argues that the Search Warrant was overbroad as it did not adequately limit the scope of the search of the Phone. (Mem. at 11.) Specifically, Defendant argues there was no probable cause to justify a search of the electronic information created a week before or after the shooting. (*Id.*) "[A]n otherwise unobjectionable description of the objects to be seized is defective if it is broader than can be justified by the probable cause upon which the warrant is based." *United States v. Galpin*, 720 F.3d 436, 446 (2d Cir. 2013) (quoting 2 W. LaFave, *Search and Seizure* § 4.6(a) (5th ed. 2012)). Further, "[e]ven where probable cause is established, still 'those searches deemed necessary should be as limited as possible,' as to avoid a 'general warrant,' i.e., 'a general, exploratory rummaging in a person's belongings.'" *United States v. Weigand*, 482 F. Supp. 3d 224, 241 (S.D.N.Y. 2020) (quoting *Coolidge v. New Hampshire*, 403 U.S. 443, 467 (1971)).

Here, the Search Warrant authorized the search of the Phone from March 1, 2021 through the execution of the warrant, or April 8, 2021. (Mem. Ex. A.) The Government argues that there is probable cause to believe that evidence, fruits, and instrumentalities of the alleged offense would be found on the Phone within this time period. (Opp. at 16.) The Court agrees. First, "a temporal limitation 'is not an absolute necessity, but is only one indicium of particularity' in a warrant" and "[l]ike many measures of particularity, the necessity of a temporal limitation depends on the context of the case . . . ." *United States v. Pinto-Thomaz*, 352 F. Supp. 3d 287, 306 (S.D.N.Y. 2018) (quoting *United States v. Hernandez*, No. 09 CR 625(HB), 2010 WL 26544, at *11

(S.D.N.Y. Jan. 6, 2010)). The Search Warrant here authorized the Government to look for evidence concerning the identity or location of the owner or user of the Phone, the geographic location of the Phone on March 12, 2021, and any media, messages, or other system files pertaining to the alleged offense. (Mem. Ex. A.) The Search Warrant was therefore not a general search of all of the Phone's files, as the search was limited by both time and subject matter. *See Pinto-Thomaz*, 352 F. Supp. 3d at 307. ("There was no need for an explicit time limit as the subject matter limitations on seizure effectively limited the time frame concerned."). Providing substantial deference to Judge McCarthy's decision, the Court holds that the Search Warrant was not overbroad.

### III. Whether Defendant is Entitled to the Return of the Phone

Defendant also moves to compel the Government to return the Phone. (Mem. at 10-11 n.1.) The Government responds that the seizure of the Phone was legal, and its need for the Phone as evidence has not ended. (Opp. at 18.)

Pursuant to Rule 41(g), "[a] person aggrieved by an unlawful search and seizure of property or by the deprivation of property may move for the property's return." Fed. R. Crim. P. 41(g). "Although a district court has general supervisory powers over federal law enforcement officials within the district pursuant to which it can order the return of property . . . it should generally decline to exercise these powers in a manner that could impede law enforcement officials in conducting their investigations." *Podlog v. United States*, No. S2 92 CR. 374(JFK), 1996 WL 403029, at *1 (S.D.N.Y. July 18, 1996) (internal citation omitted). Thus, a request for the return of property may be denied if "the government's need for the property as evidence continues." *Id*. (internal citation omitted); *see also* Fed. R. Crim. P. 41(g), 1989 Advisory Committee's Notes ("If the United States has a need for the property in an investigation or prosecution, its retention of the

property generally is reasonable."). Recognizing the need to balance the property rights of the moving party with the legitimate investigatory or prosecutorial needs of the government, the moving party bears the burden of demonstrating, by a preponderance of the evidence, that "(1) he is entitled to lawful possession of the seized property; (2) the property is not contraband; and (3) either the seizure was illegal or the government's need for the property as evidence has ended." *Pinto-Thomaz*, 352 F. Supp. 3d at 311; *see also* 3A Charles Alan Wright et al., *Federal Practice and Procedure: Criminal* § 673 (4th ed. 2019) ("On a motion to return the burden is on the moving party to show that he or she is entitled to lawful possession of the property. The party who carries the burden need do so only by a preponderance of the evidence.").

Here, Defendant has clearly fallen short of this standard. As discussed above, the Court has held that the seizure of the Phone was not illegal. Additionally, Defendant has not offered any factual basis upon which it could be determined that the Government no longer requires the possession of the Phone. Therefore, the Court finds that Defendant has not met its burden, and his request is denied at this time.

## CONCLUSION

For the foregoing reasons, Defendant's motion to suppress is DENIED.

Dated:   March 24, 2022                                            SO ORDERED:

         White Plains, New York

                                                                   _____
                                                                   NELSON S. ROMÁN
                                                                   United States District Judge