UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: __6/12/2023__

UNITED STATES OF AMERICA,

                Petitioner,

-against-

DARNELL KING,

                Respondent.

Case No. 21-CR-255 (NSR)

OPINION & ORDER

NELSON S. ROMÁN, United States District Judge:

By indictment dated April 19, 2021, Defendant Darnell Kidd ("Defendant") was charged with a violation of 18 U.S.C. 922(g)(1) for knowingly possessing a firearm while having been previously convicted of a felony. (ECF No. 9 ("Indictment")). Trial is scheduled to commence on June 26, 2023.

In anticipation of the trial, the Government moves *in limine* to: (i) to admit identifications of Defendant by a Mount Vernon Police Department ("MVPD") Detective ("Detective-1"), who is familiar with Defendant's appearance, in surveillance footage from around the time and place of a shooting that took place on March 12, 2021 (the "Shooting"); (ii) to admit a text exchange found on Defendant's cellphone that occurred on April 8, 2021, between Defendant and a phone number saved in Defendant's cellphone as "Baby Momma"; and (iii) to preclude Defendant from referencing or eliciting testimony about his family obligations, potential health or financial circumstances, or other similar factors unrelated guilt. (*See* ECF No. 64 ("Gov't MIL Mem.")).

Defendant also moves *in limine* to (i) preclude the Government from offering in its case in chief any evidence that the Defendant has more than one prior felony conviction and requesting that the Government enter into a stipulation with the Defendant admitting that the Defendant has

1

"a prior felony conviction," which would constitute conclusive proof of an essential element of the charged violation of 18 U.S.C. § 922(g); (ii) preclude the Government from referring to the Defendant as a "convicted felon"; (iii) preclude the Government from referring to anyone associated with this prosecution as the "victim" in the instant case; and (iv) preclude the government from referring to any "shooting" in the instant case. (*See* ECF No. 65 ("Def.'s MIL Mem.")).

For the following reasons, the Government and Defendant's motions are GRANTED in part, MOOTED in part, and DENIED in part.

## FACTUAL AND PROCEDURAL BACKGROUND

The Government charges that, on or about March 12, 2021, Defendant, knowing he had previously been convicted in a court of a crime punishable by imprisonment for a term exceeding one year, knowingly did possess a firearm, to wit, a Taurus Model G2C pistol, serial number: TMT20689, and the firearm was in and affecting interstate commerce. (*See* Indictment.)

According to the Complaint (ECF No. 2) on or about March 12, 2021, an individual ("Victim-1") was shot in the stomach and the leg at the corner of South 1st Avenue and East 3rd Street in Mount Vernon (the "Shooting Location"). (Compl. ¶ 3.) MVPD officers responded at approximately 4:21 pm that day and found Victim-1 bleeding from the gunshot wounds. (*Id.* ¶ 4(a)). At the Shooting Location, MVPD recovered one spent shell casing ("Shell Casting-1"). (*Id.*) MVPD was able to identify security cameras and reviewed video footage to identify the shooter ("Surveillance Footage"). (*Id.* ¶ 3.)

The Complaint alleges that from approximately 4:10 pm until 4:13 pm, a black man dressed in dark, ripped jeans, a black sweatshirt, and black ski mask ("Subject-1") is captured on Surveillance Footage located at 214 South 3rd Avenue, and that during that time, the individual

removed his ski mask and his face was captured by the camera. (*Id.* ¶ 4(b)(i)). Subject-1 is shown speaking with people in front of 214 South 3rd Avenue and walked to a vacant lot between South 2nd Avenue and East 3rd Street. (*Id.* ¶ 4(b)(ii)). The video shows Subject-1 speaking with occupants of a gray SUV parked on East 3rd Street before he continues walking east on East 3rd Street towards the Shooting Location. (*Id.* ¶ 4(b)(iii)).

At approximately 4:17 pm, Subject-1 is captured by video cameras showing that he was walking east on Est 3rd Street, away from the SUV toward the Shooting Location. (*Id.* ¶ 4(b)(iv)). After arriving at the Shooting Location, Subject-1 turned right onto South 1st Avenue and hid behind a parked car as Victim-1 crossed over South 1st Avenue towards Subject-1. (*Id.* ¶ 4(b)(v)). As Victim-1 approached the parked car, Subject-1 emerged and grabbed Victim-1 by the collar and pulled Victim-1 onto the sidewalk. (*Id.*) Subject-1 and Victim-1 engaged in a struggle for several seconds before Victim-1 attempted to run away, grabbed his stomach, and then fell to the ground. (*Id.*) Two bystanders ran from the Shooting Location and ducked. (*Id.*) Subject-1 ran south down South 1st Avenue away from the Shooting Location. (*Id.* ¶ 4(b)(vi)).

At approximately 4:19 pm, Subject-1 reappears on cameras outside of 214 South 3rd Avenue, and runs back from the vacant lot towards 214 South 3rd Avenue before heading down an alley between 214 and 218 South 3rd Avenue. (*Id.*) Over the course of several minutes, various cameras in the alleys between, and the backyard areas behind, 210, 214, and 218 South 3rd Avenue captured Subject-1 walking around with his hands on his hips. (*Id.* ¶ 4(b)(vii)). Subject-1 then proceeded to the end of the alleyway between 210 and 214 South 3rd Avenue, where he remained for some time and eventually left the alley with the front of his sweatshirt pulled up. (*Id.*)

The Surveillance Footage purportedly shows that at approximately 4:27 pm, after leaving the alleyway, Subject-1 walked behind 214 South 3rd Avenue to the back of 218 South 3rd

Avenue, where he then hopped over a fence and jogged away through a vacant lot next to 218 South 3rd Avenue. (*Id*. ¶ 4(b)(viii)).

MVPD officers responded to the alleyways between 210, 214, and 218 later that afternoon. (*Id*. ¶ 4(c)). In the crawlspace in the alley doorway, officers recovered a firearm partially hidden behind a wall (the "Recovered Firearm"). (*Id*.) The Recovered Firearm was later examined and determined to be a Taurus Model G2C pistol, serial number: TMT20689, with one spent shell casing ("Shell Casing-2") still in the chamber. (*Id*.) Based on a Bureau of Alcohol, Tobacco, Firearms, and Explosives Special Agent's review of a ballistics report prepared by Westchester Department of Public Safety Crime Laboratory, it was determined that: (i) the Recovered Firearm was operable; (ii) the Shell Casting-1 and Shell-Casting-2 were fired from the same recovered firearm. (*Id*. ¶ 5.)

Defendant was previously convicted of criminal possession of a weapon in the second degree and sentenced to nine years' imprisonment, and criminal possession of a controlled substance in the fifth degree and sentenced to two years' imprisonment. (*Id*. ¶ 7.)

A sealed complaint was filed on April 5, 2021 (ECF No. 2, unsealed on April 9, 2021). Defendant was arrested on April 8, 2021. (ECF No. 4.) Defendant had his initial appearance and detention hearing before Magistrate Judge Andrew E. Krause on April 9, 2021 (ECF No. 4), and remained detained following the hearing. The Indictment was filed on April 19, 2021. (ECF No. 9.) Defendant was arraigned on the Indictment before Magistrate Judge Judith C. McCarthy on May 6, 2021. A Rule 5(F) order was signed by Magistrate Judge Judith C. McCarthy and filed on the docket. (ECF No. 12.) On January 12, 2022, Defendant filed a motion to suppress physical evidence found on his cell phone stemming from his arrest (ECF No. 21), and the suppression motion was fully briefed on March 18, 2022. On March 24, 2022, the Court issued an Opinion

and Order denying Defendant's motion to suppress evidence found on his cell phone. (*See* ECF No. 28.) Defendant filed another motion to suppress and motion to dismiss on July 5, 2022 (ECF No. 38), which was fully briefed on August 23, 2022. The Court denied Defendant's motion to suppress and motion to dismiss on October 6, 2022. (ECF No. 50.) On February 15, 2023, the Court held a *de novo* bail review hearing, and after the Court found no change in circumstances to reconsider the Court's prior denial of bail, Defendant remained detained. (*See* Minute Entry, dated Feb. 15, 2023.) That same day, the Court issued a briefing schedule on motions *in limine*, and set deadlines on trial related documents, including *voir dire*, request to charge, all proposed jury instructions, proposed verdict sheet, witness lists, exhibit lists and pre-marked, tabbed exhibits. (*Id.*)

The parties filed motions *in limine* on May 8, 2023, which were fully briefed as of May 30, 2023. (*See* Gov't MIL Mem; Def.'s MIL Mem.; ECF No. 66 ("Gov't Opp."); ECF No. 68 ("Def.'s Opp."); ECF No. 70 ("Gov't Reply")).

## DISCUSSION

"A district court's inherent authority to manage the course of its trials encompasses the right to rule on motions *in limine*." *Highland Capital Mgmt., L.P. v. Schneider*, 551 F. Supp. 2d 173, 176–77 (S.D.N.Y. 2008) (citing *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984)). An *in limine* motion is intended "to aid the trial process by enabling the Court to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial." *Palmieri v. Defaria*, 88 F.3d 136, 141 (2d Cir. 1996) (internal citation omitted). "Because a ruling on a motion *in limine* is 'subject to change as the case unfolds,' this ruling constitutes a preliminary determination in preparation for trial."

*United States v. Perez*, No. 09 CR 1153 MEA, 2011 WL 1431985, at *1 (S.D.N.Y. Apr. 12, 2011) (quoting *Palmieri*, 88 F.3d at 139).

With certain exceptions, all relevant evidence is admissible, and evidence which is not relevant is not admissible. Fed. R. Evid. 402.  Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence; and the fact is of consequence in determining the action." Fed. R. Evid. 401.  Relevant evidence may still be excluded by the Court "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.  Though the "standard of relevance established by the Federal Rules of Evidence is not high," *United States v. Southland Corp.*, 760 F.2d 1366, 1375 (2d Cir. 1985), the Court has "broad discretion to balance probative value against possible prejudice" under Rule 403, *United States v. Bermudez*, 529 F.3d 158, 161 (2d Cir. 2008).

### I. Whether to Preclude Government from Referring to any "Shooting"

Defendant seeks to preclude any references or evidence of the Shooting. (Def.'s MIL Mem. at 5.) Defendant argues that the shooting is an uncharged crime and is not relevant evidence, and rather, the shooting is evidence of a prior bad act inadmissible under any of the permitted purposes in Rule 404(b). (*Id*.)  Defendant also argues that such reference fails the Fed. R. Evid. 403 balancing test because the evidence presents a likelihood the jury might convict the defendant based on the shooting rather than the charged crime. (*Id*. at 5–6.)

Evidence is admissible as direct evidence rather than as evidence of prior bad acts governed by Rule 404 when "it ar[ises] out of the same transaction or series of transactions as the charged offense, if it is inextricably intertwined with the evidence regarding the charged offense, or if it is

6

necessary to complete the story of the crime on trial." *United States v. Carboni*, 204 F.3d 39, 44 (2d Cir. 2000) (citation omitted). Here, the charged offense—felon in possession of a firearm—requires the Government to establish beyond a reasonable doubt that Defendant possessed a firearm. The Government seeks to introduce evidence of the shooting because central to its case-in-chief is that "defendant knowingly possessed the Recovered Firearm during the Shooting." (Gov't Opp. at 5.) The Government argues that "evidence of the Shooting proves Defendant's possession, rendering the Shooting plainly relevant, more probative than unfairly prejudicial, and admissible." (*Id*.) The Court agrees that the Shooting is "inextricably intertwined with the evidence of the charged offense" of possession of a firearm and that such evidence is both relevant and highly probative. *See Carboni*, 204 F.3d at 33.

In addition, while the Court recognizes that there is a risk of prejudice to Defendant, the Court finds that such risk is outweighed by the significant probative value of the evidence and is admissible under Fed. R. Evid. 403. The Court, however, will seek to minimize any prejudicial effects of this evidence by issuing a limiting instruction to mitigate any risk of the jury drawing improper inferences from this evidence.

Accordingly, Defendant's motion to preclude evidence and references to the Shooting is DENIED and the Government is permitted to introduce evidence of the Shooting.

## II.   Surveillance Video Identifications by Detective-1

The Government intends to present testimony from Detective-1 identifying Defendant in the Surveillance Footage (Gov't MIL Mem. at 6), which Defendant opposes. (Def.'s Opp. at 2–3.) The Government represents that the Surveillance Footage depicts the "[D]efendant before, during, and after the Shooting, including during the moments in which the defendant removed a ski mask and allowed his face to be captured by video and the subsequent period in which the

7

defendant committed the Shooting, fled, and stashed the Recovered Firearm." (Gov't MIL Mem. 6–7.)

The Government argues that Detective-1 had an extended opportunity to view the Defendant's face and body based on the following interactions with Defendant: (i) Detective-1 with others staked out the location of the Defendant for his arrest; (ii) participated in Defendant's apprehension; and (iii) spent time processing Defendant in a jail cell before subsequently being present during Defendant's presentment in this Court. (Gov't Reply at 1.)

Defendant, on the other hand, argues that Detective-1 had insufficient interactions with Defendant to be helpful to the jury. (Def.'s Opp. at 2–3.) Defendant further argues that the jury itself is "in as good a position as the witness to draw the inference" by watching the video, and therefore, the Detective's opinion is not helpful and should not be admitted." (Def.'s Opp. at 3 (citing *United States v. Rea*, 958 F.2d 1206, 1216 (2d Cir. 1992)). Defendant avers that identification testimony from the Detective runs the risk of not being an opinion that helps the jury, but instead only offers a conclusion. (*Id.*) The Government responds that issues regarding the sufficiency of Detective-1's familiarity with Defendant's appearance goes to the weight of the evidence and not to its admissibility, and that Detective-1 will be available to be cross-examined regarding his interactions with Defendant. (Gov't Reply at 4.)

Under Fed. R. Evid. 701, lay opinion testimony is admissible where the testimony is (a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702. *See* Fed. R. Evid. 701. In addition, with respect to identifications, "[w]here the jury is "in as good a position as the witness to draw the inference" to which the opinion relates, the opinion is not helpful and should not be admitted.

8

*United States v. Rea*, 958 F.2d 1206, 1216 (2d Cir.1992). "By contrast, when an opinion is the result of factors not otherwise possessed by or communicated to the jury, the opinion testimony is likely to be helpful." *United States v. Arroyo*, 600 F. App'x 11, 15 (2d Cir. 2015) (citing *Rea*, 958 F. 2d at 1216.

Here, the Court focuses on the second prong of Fed. R. Evid. 701, as that is what the parties dispute. *See* Fed. R. Evid. 701(b) (lay witness testimony is "helpful to clearly understanding the witness's testimony or to determining a fact in issue."). Because Detective-1 had direct interactions with Defendant outside of the courtroom and had time to observe Defendant during the stake out, arrest, and precinct booking, his identification testimony would be helpful to the jury. Detective-1 would be in a better position to opine on Defendant's "gait and demeanor" more so than the jury would, which would be helpful in finding whether Subject-1 in the Surveillance Footage is Defendant. *Arroyo*, 600 F. App'x at 15 (finding that found that the district court did not abuse its discretion in admitting a witnesses' identification of the defendant in a surveillance video because that witness had "familiarity with [the defendant]'s manner of dress, gait, and demeanor observed in [the witnesses'] several prior encounters" with the defendant). Defendant would also be wearing a mask while in the courtroom given the Court's current COVID-19 protocol, and though Defendant could take off his mask so that the jury could compare his image to Subject-1's image in the Surveillance Footage, Detective-1's opinion based on his more extensive, unobstructed observation of Defendant on previous occasions would be helpful to the jury. *See United States v. Ray*, No. 20-CR-110 (LJL), 2022 WL 558146, at *10 (S.D.N.Y. Feb. 24, 2022) ("while the jury—if it chooses to look at [defendant]—will have the opportunity over time to observe him, that observation may be unsatisfactory. First and foremost, given the Court's current COVID-19 protocol, [defendant] will be wearing a mask for the duration of the trial and

9

would only remove it for any meaningful period of time if he were to take the witness stand. Agent Maguire, on the other hand, arrested [defendant] in February 2020, when he was not wearing a mask, and Agent Maguire was able to observe his face unobstructed.").

Questions pertaining to the extent of Detective-1's familiarity with and observations of the Defendant could be adequately explored on cross examination, and the jury is free to disregard Detective-1's testimony. *See also United States v. White*, 639 F.3d 331, 336 (7th Cir. 2011) (finding that district court did not err in allowing lay witnesses to identify defendant in surveillance tape because "jury was free to disregard [witnesses'] testimony that the individual depicted in the still photo from the surveillance video was [defendant].").

For the foregoing reasons, the Government's motion to admit Detective-1's surveillance video identification is GRANTED.

### III. Text Exchanges Between the Defendant and "Baby Momma"

The Government seeks to admit seven text messages between Defendant and another person, "Baby Momma," under Fed. R. Evid. 801 and 802. Defendant is labeled as "Larry Shoota" in the text messages, which were exchanged nearly a month after the March 12, 2021 Shooting. The texts are as follows:

- Baby Momma to Defendant [read on 4/8/2021 at 2:37:20 PM (UTC-4)]: "On some real shit u gone regret what u doing right now" [sic]
- Defendant to Baby Momma [delivered on 4/8/2021 at 2:37:33 PM (UTC-4)]: "What am I doing"
- Baby Momma to Defendant [read on 4/8/2021 at 2:37:52 PM (UTC-4)]: "But have fun wit the shootouts n the hanging out over there I ain't missing nothing." [sic]
- Baby Momma to Defendant [read on 4/8/2021 at 2:44:24 PM (UTC-4)]: "Continue on"
- Baby Momma to Defendant [read on 4/8/2021 at 2:44:36 PM (UTC-4)]: "They all can give u what I can't <3" [sic]
- Baby Momma to Defendant [read on 4/8/2021 at 2:44:39 PM (UTC-4)]: "I'm Happy for you."

- Defendant to Baby Momma [delivered on 4/8/2021 at 2:46:18 PM (UTC-4)]: "At a time of war I can't even be on point because I'm sitting here beefing with you."

(Gov't MIL Mem. at 4–5.)

The Government argues that the statements made by the Defendant are not hearsay under Fed. R. Evid. 801(d)(2)(A), and the text sent by "Baby Momma" are also not hearsay because they are not statements being offered to prove the truth of anything asserted, but rather, are being offered for the limited purpose of placing Defendant's "at a time of war" text into context. (*See* Gov't MIL Mem. at 11; Gov't Reply at 3–4.)

Defendant do not argue that the text messages sent by him are inadmissible hearsay, nor would the Court find that they are inadmissible hearsay. *See* Fed. R. Evid. 801(d)(2)(A) (providing hearsay exception for statements "offered against an opposing party and . . . made by the party in an individual . . .capacity"). Defendant instead avers that the two texts that he purportedly sent are not relevant admissions of fact. (Def.'s Opp. at 4.) Defendant points out that these texts occurred approximately one month after the March 12, 2021 incident. Defendant also argues that the first text sent by the Defendant – "What am I doing" – is not a substantive statement of any fact, and the second text sent by the Defendant, which reads "[a]t a time of war I can't even be on point because I'm sitting here beefing with you," has no relevance to the felon in possession charge stemming from the March 12, 2021 Shooting. (*Id.*) Lastly, Defendant argues that even if these two texts are admissible, there are no grounds to admit the texts sent by "Baby Momma" as they do not provide any relevant context to the Defendant's two text messages. (*Id.*)

The Government responds that because evidence regarding the Shooting is admissible, then these text messages should also be regarded as admissible. (Gov't Reply at 3.) The Government also argues that although the "At a time of war" text message was sent a month after the Shooting,

11

it was sent on the date of the Defendant's arrest, and therefore is "relevant to prove that the defendant possessed the Recovered Firearm on March 12, 2021." (*Id*.)

The Court finds that the text messages run the risk of being more prejudicial than probative under Rule 403, and in any event, they do not appear to be relevant. The Government fails to adequately explain how Defendant's text messages are relevant to the March 12, 2021 Shooting, particularly as these text messages occurred nearly a month after the event and do not appear to be referencing the Shooting incident. Baby Momma's text messages fail to give relevant context showing that the "At a time of war" comment is connected with the March 12, 2021 Shooting. The Court agrees with Defendant that the Government appears to be seeking entry of Baby Momma's comment "have fun wit[h] the shootouts," which would likely be hearsay standing alone, but even that comment appears to reference some future-facing event and not the previous, March 12, 2021 Shooting.

The Government's citation to *United States v. Robinson* does not help make its point. (Gov't Reply at 3–4.) In *United States v. Robinson,* the Circuit Court found that the district court did not abuse its discretion by admitting as relevant evidence that the defendant possessed a similar gun at the time of his arrest as the one used during the crime incident 10-weeks before. *United States v. Robinson*, 560 F.2d. 507, 512–13 (2d Cir. 1977). That fact pattern is not analogous to the facts presented here, where the connection between the Defendant's "at a time of war" text message and the alleged fact that he possessed a firearm on March 12, 2021 is more dubious.

For the foregoing reasons, the Court DENIES the Government's motion to admit the text messages discussed herein.

### IV. Evidence or Testimony About His Family Obligations or Any Potential Health or Financial Circumstances

The Government moves to preclude Defendant from offering evidence or testimony about his family obligations (*e.g.*, caring for young children), potential health or financial circumstances, "or any other similar personal factors unrelated to guilt . . . ." (Gov't MIL Mem. at 12.) The Government argues that references or testimony about potential health or financial circumstances have no bearing on the merits of the case and would simply be presented to appeal to the jury's sympathies, and should therefore be precluded. (Gov't. Reply at 4–5.) The Government anticipates that the Defendant may try to present evidence that he was expecting twins approximately four months after the Shooting took place and may have young children at home, or other similar personal circumstances. (*Id.*)

Defendant argues that the order that the Government seeks is premature, and instead asks the Court to refrain from ruling on this issue prior to the presentation of any defense case in order to be in a better position to rule on the motion in the appropriate factual context. (Def.'s MIL Mem. at 5.)

Under Fed. R. Evid. 401, evidence is relevant where it "has any tendency to make a fact more or less probable than it would be without the evidence," so long as "the fact is of consequence in determining the action." Fed. R. Evid. 401. Upon consideration of the parties' arguments on this motion, the Court PRECLUDES evidence and testimony regarding Defendant's family obligations, potential health, or financial circumstances, as those are not relevant to the merits of the case and may prejudice the jury. *See United States v. Paccione*, 949 F.2d 1183, 1201 (2d Cir. 1991) (finding that district court did not abuse discretion by precluding "evidence that [defendant's] then-teenage son had been born with cerebral palsy and that [defendant] had devoted his life to caring for the son" as such evidence "had no bearing on his honesty or integrity and [] could well cause the jury to be influenced by sympathies having no bearing on the merits of the

13

case."); *see also United States v. Mejia*, No. 16 CR. 45 (RWS), 2016 WL 6662265, at *2 (S.D.N.Y. Nov. 10, 2016) (precluding reference and testimony regarding defendant's and family's health and finances, because "the statements regarding the Defendant's health and finances are irrelevant to the merits of this case and provide no context to the admissible statements."). The Court may reconsider this instant ruling in the event that Defendant identifies a basis to include particular evidence or arguments that implicates these personal circumstances.

### V. Stipulation that Defendant has a "Prior Felony Conviction"

The Defendant moves to preclude the Government from offering evidence as to more than one felony conviction and requests an order requiring the Government to enter into a stipulation "admitting as conclusive proof that the defendant has a felony conviction." (Def.'s MIL Mem. at 3.) In response, the Government states that it agrees to a standard stipulation regarding Defendant's prior felony conviction, which will serve as "conclusive proof that the defendant has a felony conviction." (Gov't Opp. at 2.) The Government also agrees not to offer further evidence regarding the Defendant's criminal history, except as may be permitted by Fed. R. Evid. 404(b), 608, and 609.

Given that the parties have agreed to enter a stipulation as requested by Defendant, the Court finds Defendant's motion to be MOOT. To the extent that the Government offers evidence regarding Defendant's criminal history during trial, the Court will assess whether such evidence may be permitted under by Fed. R. Evid. 404(b), 608, and 609 during trial.

### VI. Whether to Preclude Reference to Defendant as a "Convicted Felon"

Defendant seeks to preclude the Government from referring to him as a "convicted felon" on the basis that such reference is inherently prejudicial, "especially if such reference is for any purpose other than proving the ex-felon element of § 922(g)." (Def.'s MIL Mem. at 3.) The

Government disagrees and notes that the term "convicted felon" is a commonly accepted shorthand to refer to the prior-conviction element of the charged crime. (Gov.'s Mot. at 5–8.)

Courts in this Circuit have declined to preclude the Government from using the term "convicted felon" during trials for Section 922(g) charges. *See United States v. White*, 312 F. Supp. 3d 350, 354 (E.D.N.Y. 2018) (declining to prohibit the use of the phrase "convicted felon"); *United States v. White*, No. 08CR0682(NGG), 2009 WL 4730234, at *2 (E.D.N.Y. Dec. 4, 2009) (declining to impose a blanket prohibition on "convicted felon"). This Court agrees that the term "convicted felon" is a "convenient shorthand of the prior-conviction element of the statutory offense charged." *White*, 2009 WL 4730234, at *2. The Court is not otherwise persuaded by Defendant's arguments that such reference would fail the Fed. R. Evid. 403 balancing test or is prohibited under Fed. R. Evid. 404.

Given that the parties have agreed to stipulate to Defendant's prior felony conviction (ECF No. 66), this Court expects the Government to "refer generally to the defendant's prior felony convictions in a judicious manner." (Govt.'s Opp. at 2.) The Court notes, however, that it will closely monitor the Government's use of the term "convicted felon" to ensure the term is not overused or employed in a prejudicial manner. *See White*, 312 F. Supp. 3d at 354 (cautioning the same).

Accordingly, this Court DENIES Defendant's motion to preclude the Government from referring to him as a "convicted felon." The Court also notes its intention to issue a limiting instruction regarding the stipulated fact of Defendant's prior conviction.

### VII. Whether to Preclude Reference to Anyone Associated with this Prosecution as the "Victim"

Defendant seeks to preclude any mention to a "victim," arguing that the sole crime for which he is being charged is for being a felon in possession of a firearm, which does not describe

15

a crime against any individual. (*See* Def.'s MIL Mem. at 4.) Defendant argues that under Fed. R. Evid. 403, the term "victim" is of no probative value with respect to the core elements of the 18 U.S.C. § 922(g) charge. (*Id*.) Defendant further argues that allowing reference to the individual shot as a "victim" would be unduly and unfairly prejudicial, and could mislead and confuse the jury by suggesting that Defendant is on trial for the alleged shooting rather than for unlawful possession of a firearm. (*Id*. at 5.)

The Government, on the other hand, argues that courts routinely allow the Government to use the term "victim" in trials involving violations of 18 U.S.C. § 922(g). (*See* Gov't Opp. at 4.) The Court attempts to distinguish the facts of this instant case with the facts in *United States v. Wagner*, No. 20-CR-410 (NSR), 2022 WL 19179, at *6 (S.D.N.Y. Jan. 3, 2022), where the Court precluded the Government from referring to an individual who was shot at as a "victim." The Government argues that in *Wagner*, the Government relied on cases that did not involve violations of 18 U.S.C. § 922(g) and the defendant there shot at his girlfriend but did not hit her, whereas here, the "defendant's commission of the charged conduct directly caused injuries to the Victim." (Gov't Opp. at 4.)

The Court finds several issues in the Government's arguments. Whether or not a bullet actually hit the individual is not what is at issue in this case, but rather, the central question is whether Defendant possessed a weapon despite having a prior federal conviction. In addition, the Government's citations to *United States v. Helbrans*, 2021 WL 4778525, at **1–2, 16–17 (S.D.N.Y. Oct. 12, 2021) (defendants were charged with international kidnapping of minors) and *United States v. Gasperini*, 2017 WL 3140366, at *7 (E.D.N.Y. July 21, 2017) (defendant was charged with defrauding advertisers) do not assist the Government's argument, because in those cases, Defendants were charged with crimes committed against a person or entity. Also, the Court

reviewed the dockets highlighted by the Government where the term "victim" was used in a trial involving a violation of 18 U.S.C. § 922(g), and notes that in two of those cases, Defendants does not appear to have objected to the use of the term "victim," like Defendant does herein. *See generally*, *United States v. Jarrett,* 19 Cr. 670 (LGS) (S.D.N.Y. Apr. 20, 2021); *United States v. Saunders,* 19 Cr. 679 (LGS) (Dkt. 64, at 20) (S.D.N.Y. May 4, 2021) (same).

The Court, however, does recognize that courts have come to different conclusions regarding whether to grant a defendant's motion to preclude the term "victim" in 18 U.S.C. § 922(g) cases. While the Court granted such request in *Wagner*, 2022 WL 19179, at *6, the court in *United States v. Scott*, No. 21 CR. 429 (AT), 2022 WL 1026725, at *3 (S.D.N.Y. Apr. 5, 2022) denied the same request, finding that:

> "the Government's theory of the case is that Defendant shot Witness A, making him the "victim" in the encounter. The Government may reasonably use the term when arguing for its interpretation of the evidence. And, because the Court shall instruct the jury on the law and elements of the crime charged, there is little risk of jury confusion or prejudice to Defendant from use of the term "victim."

*Id*.

The Court in *Wagner*, on the other hand, reasoned that "the charged violation of 18 U.S.C. § 922(g)(1) and (2), being a felon in possession of a firearm, does not involve a crime against a person [] [a]ny reference to [d]efendant's ex-girlfriend as a 'victim' does not provide probative value to the core elements of this charged crime." *Wagner*, 2022 WL 19179, at *6; *see also MF Global Holdings Ltd*., 232 F. Supp. 3d 558, 570 (S.D.N.Y. 2017) ("[C]ourts often prohibit the use of certain pejorative terms when such categorizations were inflammatory and unnecessary to prove a claim and such statements do not bear on the issues being tried." (internal quotation marks and citations omitted)). The *Wagner* court also found that "the Government will be able to provide the jury with the context of the events . . . without referring to [the individual shot at] as a 'victim.'" *Id*.

The Court finds that the same reasoning as in *Wagner* should apply here.  Like in *Wagner*, the Government can provide the jury with context of the March 12, 2021 Shooting without using the term "victim."  Therefore, the Court GRANTS Defendant's motion *in limine* and precludes the Government from referring to individual shot as the "victim."

## CONCLUSION

For the foregoing reasons, the Government's motion *in limine* is GRANTED in part and DENIED in part and Defendant's motion *in limine* is GRANTED in part, MOOTED in part, and DENIED in part.

In summary, the Court preliminarily: (1) permits the Government to introduce evidence of the Shooting; (2) permits the Government to admit Detective-1's surveillance video identification; (3) precludes the Government from admitting Defendant's April 8, 2021 text messages with "Baby Momma"; (4) precludes Defendant from admitting evidence or testimony about Defendant's family obligations or potential health or financial circumstances; (5) moots Defendant's request that the parties enter into a stipulation that Defendant has a "Prior Felony Conviction," as the parties have already agreed to do so; (6) declines to preclude the Government from referring to Defendant as a "convicted felon"; and (7) grants Defendant's motion to preclude any reference to the individual that was shot as the "victim".

The Clerk of the Court is kindly directed to terminate the motion at ECF Nos. 64 and 65.

Dated: June 12, 2023
      White Plains, NY

SO ORDERED:

HON. NELSON S. ROMAN
UNITED STATES DISTRICT JUDGE